**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
RYAN O'DELL,                                    :
                                                :
                    Plaintiff,                  :    Civil Action No. 23-cv-03071
                                                :
v.                                              :    **COMPLAINT FOR VIOLATIONS OF**
                                                :    **SECTIONS 14(a) AND 20(a) OF THE**
INDUS REALTY TRUST, INC., DAVID R.              :    **SECURITIES EXCHANGE ACT OF**
BECHTEL, FREDERICK M. DANZIGER,                 :    **1934**
GORDON F. DUGAN, MICHAEL S.                     :
GAMZON, JONATHAN P. MAY, MOLLY                  :    **JURY TRIAL DEMANDED**
NORTH, AMY ROSE SILVERMAN,                      :
MICHAEL SIMANOVSKY, and ALBERT H.               :
SMALL, JR.,                                     :
                                                :
                    Defendants.                 :
---------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against INDUS Realty Trust, Inc. ("INDUS

Realty" or the "Company") and the members of INDUS Realty's board of directors (the "Board"

or the "Individual Defendants" and collectively with the Company, the "Defendants") for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §

244.100, in connection with the proposed acquisition of INDUS Realty by affiliates of

Centerbridge Partners, L.P. ("Centerbridge") and GIC Real Estate, Inc. ("GIC" and together with

Centerbridge, the "Buyout Group").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on March 31, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby IR Merger Sub II, Inc. ("Merger Sub"), a wholly owned direct subsidiary of IR Parent, LLC ("Parent"), will merge with and into INDUS Realty, with INDUS Realty becoming a wholly owned subsidiary of Parent (the "Proposed Transaction").   Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 22, 2023 (the "Merger Agreement"), each INDUS Realty stockholder will receive $67.00 in cash (the "Merger Consideration") for each INDUS Realty share owned.   Merger Sub and Parent are both affiliates of Centerbridge and GIC.

3.      As discussed below, Defendants have asked INDUS Realty's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.   Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to INDUS Realty's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff and Defendant INDUS Realty reside in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, an owner of INDUS Realty stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant David R. Bechtel has served as a member of the Board since 2016.

11.     Individual Defendant Frederick M. Danziger has served as a member of the Board since 1997.

12.     Individual Defendant Gordon F. DuGan has served as a member of the Board since 2020 and is the Chairman of the Board.

13.     Individual Defendant Michael S. Gamzon has served as a member of the Board since 2016 and is the Company's President and Chief Executive Officer.

14.     Individual Defendant Jonathan P. May has served as a member of the Board since 2012.

15.     Individual Defendant Molly North has served as a member of the Board since 2020.

16.     Individual Defendant Amy Rose Silverman has served as a member of the Board since 2019.

17.     Individual Defendant Michael Simanovsky has served as a member of the Board since 2022.

18.     Individual Defendant Albert H. Small, Jr. has served as a member of the Board since 2009.

19.     Defendant INDUS Realty is a company incorporated under the laws of the State of Maryland and maintains its principal offices at 641 Lexington Avenue, 26th Fl., New York, NY 10022.  The Company's stock trades on the NASDAQ Global Select Market under the symbol "INDT."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.      **The Proposed Transaction**

22.     INDUS Realty is a real estate business principally engaged in developing, acquiring, managing and leasing industrial/warehouse properties.  INDUS owns 41 buildings

4

totaling approximately 4.6 million square feet (4.2 million of which is industrial/warehouse space) in Connecticut, Pennsylvania, North Carolina and Florida, in addition to over 3,400 acres of undeveloped land.

23.    On February 22, 2023, the Company announced the Proposed Transaction:

NEW YORK--(BUSINESS WIRE)--INDUS Realty Trust, Inc. (Nasdaq: INDT) ("INDUS" or the "Company"), a U.S. based industrial/logistics REIT, today announced it has entered into a definitive merger agreement under which affiliates of Centerbridge Partners, L.P. ("Centerbridge"), a leading global private investment firm with deep experience in real estate, and GIC Real Estate, Inc. ("GIC"), a global institutional investor, will acquire all of the outstanding shares of the Company in an all-cash transaction valued at approximately $868 million. The transaction was unanimously approved by the participating members of INDUS' Board of Directors.

Under the terms of the merger agreement, upon the closing of the transaction, INDUS stockholders will receive $67.00 per share in cash, subject to certain adjustments as set forth therein. The transaction represents a premium of 17% to the Company's unaffected stock price on November 25, 2022, the date of Centerbridge's initial public announcement that it intended to make a takeover offer with GIC to acquire INDUS, and a 26% premium to INDUS' unaffected 30-day volume-weighted average stock price ending November 25, 2022.

"After conducting an extensive process to explore the Company's strategic alternatives, we are pleased to have reached an agreement with Centerbridge and GIC. The transaction delivers immediate and significant value to our stockholders, and we believe it validates the quality of the platform and portfolio we have built over INDUS' long history," said Michael Gamzon, INDUS' President and Chief Executive Officer. "I would like to extend my thanks to the entire Board and management team for their hard work during this process, and for their unwavering commitment to act in the best interests of our stockholders."

**Dividend Information**

Under the terms of the merger agreement, INDUS will be allowed to declare and pay its regular first quarter and second quarter 2023

cash dividends in the ordinary course, subject to certain limitations as set forth therein. Thereafter, INDUS has agreed to suspend payment of any further regular quarterly dividends until the earlier of the closing or the termination of the merger agreement. The merger consideration will be increased by an amount per share, if any, equal to the sum of (1) the amount per share of the most recently declared regular quarterly cash dividend during the first two quarters of 2023 for which the record date has not passed prior to the close of the transaction, plus (2) the cash amount per share equal to (x) the amount per share of such most recently declared regular quarterly cash dividend prior to the day prior to the closing date, multiplied by (y) the number of days between the end of the quarterly period for which such most recently declared regular quarterly cash dividend was declared and the day prior to the closing date, divided by (z) 90, rounded to the nearest whole cent, without duplication for any period.

**Additional Transaction Details**

This agreement was reached after a comprehensive review of all strategic options to maximize INDUS' stockholder value. The review was conducted with the support of the Company's independent advisors.

The transaction is expected to close in the summer of 2023 and is subject to customary closing conditions including approval by a majority of the shares of INDUS common stock outstanding and certain regulatory approvals as set forth in the merger agreement. Michael Gamzon, President, Chief Executive Officer and Director of INDUS, and Frederick M. Danziger, Director of INDUS, and their spouses have signed separate voting agreements under which they agreed to vote certain shares of INDUS common stock controlled by each of them in support of the proposed transaction, representing, in the aggregate, approximately 6.7% percent of the current outstanding voting power of INDUS common stock. In addition, certain affiliates of Conversant Capital LLC have signed a separate voting agreement under which they agree to vote the shares of INDUS common stock beneficially owned by them in support of the proposed transaction representing, in the aggregate, approximately 10.3% of the current outstanding voting power of INDUS common stock. The closing of the transaction is not contingent on the receipt of financing by Centerbridge and GIC.

INDUS will issue its financial results for the quarter and full year ending December 31, 2022, in early March, but due to the pending

Case 1:23-cv-03071-JPC   Document 1   Filed 04/12/23   Page 7 of 15


acquisition the Company will not hold a conference call or webcast to discuss these results.

Subject to and upon completion of the transaction, INDUS' common stock will no longer be listed on Nasdaq and INDUS will become a privately held company.

Morgan Stanley & Co. LLC is serving as exclusive financial advisor to INDUS and Latham & Watkins LLP is serving as legal counsel.

BofA Securities Inc. and J.P. Morgan Securities LLC are serving as financial advisors to Centerbridge and GIC. Simpson Thacher & Bartlett LLP is serving as legal counsel to Centerbridge and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel to GIC.[1]

\* \* \*

24.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that INDUS Realty's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

25.     On March 31, 2023, INDUS Realty filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any

---

[1] *INDUS Realty Trust to Be Acquired by Centerbridge Partners and GIC Real Estate in a Transaction Valued at $868 Million*, BUSINESSWIRE (Feb 22, 2023), https://www.businesswire.com/news/home/20230222005559/en/INDUS-Realty-Trust-to-Be-Acquired-by-Centerbridge-Partners-and-GIC-Real-Estate-in-a-Transaction-Valued-at-868-Million.

material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by INDUS Realty management and relied upon by the Financial Advisors in their analyses.  The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.  The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors to aid them in forming a view about the stand-alone valuation of the Company.  Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that INDUS Realty management provided to the Board and the Financial Advisors.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

27.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Cash NOI from continuing operations, EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[2]

30.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

---

[2] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

31.   With respect to Morgan Stanley's *Comparable Public Companies Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected by Morgan Stanley for the analysis.

32.   With respect to Morgan Stanley's *Net Asset Value Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the range of market capitalization rates as of February 2023 of 4.45% to 6.25%; (ii) the public market adjustment applied by Morgan Stanley; (iii) debt and other liabilities of the Company; (iv) the estimated number of fully diluted Company common shares outstanding as of February 17, 2023; and (v) the estimated costs required to consummate the Proposed Transaction.

33.   With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for the Company; (ii) the inputs and assumptions underlying the discount rates ranging from 7.1% to 7.8%; (iii) the weighted cost of capital of the Company; (iv) the outstanding debt and cash of the Company as of December 31, 2022; (v) inputs and assumptions underlying the range of implied exit capitalization rates of 6.3% to 6.8%; and (vi) the estimated number of fully diluted shares of Company common stock as of February 17, 2023.

34.   With respect to Morgan Stanley's *Private Buyer Analysis*, the Proxy Statement fails to disclose the inputs and assumptions underlying the range of market capitalization rates of 5.5% to 6.5%.

35.   With respect to Morgan Stanley's *Research Analyst Price Targets and NAV Targets* analysis, the Proxy Statement fails to disclose: (i) the five equity research analysts observed; and (ii) the public market trading price targets and NAV targets for the shares of INDUS Realty common stock prepared and published by the equity research analysts.

36.     With respect to Morgan Stanley's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the premia paid in the selected transactions.

37.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial

projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders, although they could have done so without extraordinary effort.

42.    Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of INDUS Realty within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of INDUS Realty, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of INDUS Realty, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of INDUS Realty, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger

Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

     D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

     E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

     Plaintiff demands a trial by jury.

DATED: April 12, 2023

                                **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

                                /s/ *Benjamin Y. Kaufman*
                                Benjamin Y. Kaufman
                                Rourke C. Donahue
                                270 Madison Avenue
                                New York, NY 10016
                                Telephone: (212) 545-4620
                                Fax: (212) 686-0114
                                kaufman@whafh.com
                                donahue@whafh.com

                                *Attorneys for Plaintiff*